IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 06-cv-01728-REB-MJW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WATER SUPPLY AND STORAGE COMPANY, *in personam*, and
GRAND RIVER DITCH, *in rem*,

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

**Blackburn, J.**

This matter is before me on the defendants' **Motion To Dismiss Filed by Defendant Water Supply and Storage Company on Behalf of Itself and the Grand River Ditch** [#28], filed March 7, 2007. The plaintiff filed an response [#33], and the defendant filed a reply [#39]. I deny the motion.

### I. JURISDICTION

I have jurisdiction over the plaintiff's claims under 16 U.S.C. § 19jj-2, part of the Park System Resource Protection Act (PSRPA), and under 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as plaintiff).

### II. STANDARD OF REVIEW

When ruling on a motion to dismiss under Rule 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). I must accept all well-pleaded allegations of the

complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); **see also *Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 538 U.S. 999 (2003). I review the complaint to determine whether it "contains 'enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. July 9, 2007) (quoting ***Bell Atlantic Corp. v. Twombly***, ___ U.S. ___, ___, 127 S.Ct. 1955,1974 (2007)). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." ***Id.*** (emphases in original).[1]

### III. FACTS

This description of facts is based on the allegations in the complaint, which I must take as true for the purpose of resolving the motion to dismiss. The defendants' motion to dismiss concerns the United States' *in rem* claim against the Grand River

---

[1] Until recently, the standard of review for a motion under Rule 12(b)(6) was whether "'it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ***Beedle v. Wilson***, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46 (1957)). The Tenth Circuit has noted that the relationship between the standard announced in ***Bell Atlantic Corp.*** and the Supreme Court's contemporaneous decision in ***Erickson v. Pardus***, ___ U.S. ___, ___, 127 S.Ct. 2197, 2200 (2007), in which the Supreme Court upheld the notice pleading standards of Rule 8(a)(2), is not entirely clear. **See *Alvarado v. KOB-TV, L.L.C.***, 493 F.3d 1210, 1215 n.2 (10th Cir. July 13, 2007). Nevertheless, my decision with respect to the 12(b)(6) motion would be the same under either the old ***Conley v. Gibson*** "no set of facts" standard or the ***Bell Atlantic Corp.*** plausibility standard. **See *id.***

2

Ditch. The Grand River Ditch is a drainage ditch that is carved into the slopes of the Never Summer Range. The purpose of the ditch is to capture snow melt and rain water from the eastern side of the Never Summer Range and divert it over the Continental Divide to the Long Draw Reservoir. Defendant Water Supply and Storage Company (WSSC) is the holder of a right-of-way, or easement, for the Grand River Ditch. The majority of the Grand River Ditch flows through land that became part of Rocky Mountain National Park after the ditch was built.

WSSC must remove accumulated snow, ice, and debris from the Grand River Ditch each spring before runoff from the Never Summer Range can be diverted safely through the ditch. During the spring of 2003, WSSC began removing accumulated snow, ice, and debris from the Grand River Ditch two weeks later than it had in prior years. At least one WSSC employee warned WSSC that delay in removing snow, ice, and debris from the ditch could result in a ditch breach. Sometime prior to May 30, 2003, WSSC closed off some or all of the Grand River Ditch bypass gates, causing the ditch to divert water, before snow, ice, and other debris adequately was removed from the ditch. On or about May 30, 2003, the Grand River Ditch breached within the boundaries of Rocky Mountain National Park. The breach was caused by water backing up in the ditch, and eventually overtopping the ditch, as a result of accumulated snow, ice, and other debris in the ditch. Water flowing through the beach excavated a gully measuring approximately 167 feet wide and 60 feet deep. A large portion of the mountainside below the breach was washed to the valley floor below the ditch by the erosive power of the water, rock, mud, and vegetation. Much of the upper Colorado River watershed in the Rocky Mountain National Park was closed to visitors

3

until water levels in the river receded and damage to trails, bridges, and campsites could be repaired.

IV.  ANALYSIS

In its second claim for relief, the United States asserts an *in rem* claim against the Grand River Ditch under 16 U.S.C. § 19jj-1, part of the Park System Resource Protection Act (PSRPA).  This statute provides, in relevant part:

> (a) In general. Subject to subsection (c), any person who destroys, causes the loss of, or injures any park system resource is liable to the United States for response costs and damages resulting from such destruction, loss, or injury.
>
> (b) Liability in rem. Any instrumentality, including but not limited to a vessel, vehicle, aircraft, or other equipment that destroys, causes the loss of, or injures any park system resource or any marine or aquatic park resource shall be liable in rem to the United States for response costs and damages resulting from such destruction, loss, or injury to the same extent as a person is liable under subsection (a).

16 U.S.C. § 19jj-1 (a) & (b).

The defendants argue that no reasonable interpretation of § 19jj-1 (b) can lead to a determination that Congress intended a ditch or a real property easement to be an instrumentality for the purposes of this statute.  If neither the ditch nor the easement in which the ditch exists are instrumentalities, then neither the ditch nor the easement can be liable *in rem*.  Resolution of the motion to dismiss requires interpretation of the term instrumentality as it is used in § 19jj-1(b).

The first step in interpreting a statute is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute" in question.  **Robinson v. Shell Oil Co.**, 519 U.S. 337, 340 (1997).  The "plainness or ambiguity of statutory language is determined by reference to the language itself, the

4

specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341.  If the statutory language is not ambiguous, then the court's inquiry must cease, and the statute must be enforced as written.  *Id*. at 340.

On the other hand, if the statutory language is ambiguous, then the ambiguity must be resolved by the court.  *Id*. at 345.  "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses."  *McGraw v. Barnhart*, 450 F.3d 493, 498 (10th Cir. 2006) (quotation omitted).  If an ambiguity is found, then the court may seek guidance from Congress's intent, a task that is aided by reviewing legislative history.  *Id*. at 499.  A court also can resolve ambiguities by looking at the purpose behind the statute.  *Id*.

The PSRPA does not define the term "instrumentality," but the subsection in question provides examples of instrumentalities.  Specifically, the subsection says "(a)ny instrumentality, including but not limited to a vessel, vehicle, aircraft, or other equipment."  *Id*.  The defendants argue that given "the nature and scope of the enumerated examples and the catch-all, illustrating phrase 'other equipment,'" the term "equipment" is the "critical definition and nature of 'instrumentality'" for the purpose of this statute. *Motion to dismiss* [#28], filed March 7, 2007, p. 6, quoting 16 U.S.C. § 19jj-1 (b).  The term "equipment" also is not defined in the PSRPA.  In short, the defendant argues that the broad term "any instrumentality" is narrowed in the statute by phrase "including but not limited to a vessel, vehicle, aircraft, or other equipment."

The plaintiff argues that the plain meaning of the word "instrumentality" is very broad, and essentially includes anything used to achieve an end or a purpose.  The plaintiff further contends that the broad meaning of the word instrumentality is not

5

effectively narrowed by the "including but not limited to" language which follows the term "any instrumentality" in the statute.

"When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary." ***In re Overland Park Fin. Corp.***, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word "instrumentality" generally are broad. Black's Law Dictionary defines "instrumentality" as "[a] thing used to achieve an end or purpose." ***Black's Law Dictionary*** 814 (8th ed. 1999). Webster's Third New International Dictionary defines "instrumentality" as "something by which an end is achieved" or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out." ***Webster's Third New International Dictionary*** 1172 (1971). The plaintiff alleges that the Grand River Ditch "captures snow melt and rain water from the east side of the Never Summer Range and diverts it over the Continental Divide at La Poudre Pass to the Long Draw Reservoir." *Complaint*, ¶ 12. The Grand River Ditch is something by which an end is achieved and thus falls within the dictionary definition of the term "instrumentality."

Viewed in isolation, the word "instrumentality" is broad, but not ambiguous. However, the

> meaning – or ambiguity – of certain words or phrases may only become evident when placed in context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme and fit, if possible, all parts into a harmonious whole.

***FDA v. Brown & Williamson Tobacco Corp.***, 529 U.S. 120, 132- 133 (2000) (quotations and citations omitted). According to the defendants, the examples of

6

instrumentalities provided in the statute indicate that Congress intended to narrow the meaning of the broad term "instrumentality" to include only the type of instrumentalities specified in § 19jj-1(b). *Reply* [#39], filed April 17, 2007, p. 3.

I conclude that the meaning of the term "instrumentality" in 16 U.S.C. § 19jj-1 (b) is not ambiguous. Again, the term means, in essence, something by which an end is achieved. As written, the statute uses the broad term "instrumentality," followed by the phrase "including but not limited to," followed by four examples of instrumentalities, "a vessel, vehicle, aircraft, or other equipment . . . ." Based on this list of examples, the defendants seek to limit the meaning of the term instrumentality to items that are similar to a vessel, vehicle, aircraft, or other equipment. This interpretation, however, ignores the meaning of the introductory phrase "including but not limited to." The plain meaning of "including but not limited to" is that the term "instrumentality" is meant to include the subsequently specified examples of instrumentalities and also is meant to include other items not specified in the statute. In short, the term "instrumentality" is broad but not ambiguous, and the phrase "including but not limited to" is not ambiguous. Giving the phrase "including but not limited to" its ordinary meaning, the statute cannot be read to limit the term "instrumentalities" to vessels, vehicles, aircraft, or other equipment. The context of 16 U.S.C. § 19jj-1 and the broader context of the Act do not do not create any ambiguity about the plain meaning of these words as used in the Act. The meaning of the term "instrumentality," as used in 16 U.S.C. § 19jj-1 (b), is not ambiguous.

## V. CONCLUSION & ORDER

Again, If the statutory language is not ambiguous, then the court's inquiry must

cease, and the statute must be enforced as written. *Robinson*, 519 U.S. at 340. The meaning of the term "instrumentality," as used in 16 U.S.C. § 19jj-1 (b), is not ambiguous. Given the broad, usual meaning of the word "instrumentality," the Grand River Ditch is an instrumentality, and the ditch is subject to *in rem* liability under 16 U.S.C. § 19jj-1 (b).

**THEREFORE, IT IS ORDERED** that the defendants' **Motion To Dismiss Filed by Defendant Water Supply and Storage Company on Behalf of Itself and the Grand River Ditch** [#28], filed March 7, 2007, is **DENIED**.

Dated March 4, 2008, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
**Robert E. Blackburn**
**United States District Judge**