IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Robert E. Blackburn, Judge

Civil Case No. 06-cv-01728-REB-MJW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WATER SUPPLY AND STORAGE COMPANY, in personam, and
GRAND RIVER DITCH, in rem,

    Defendants..

**ORDER DENYING MOTIONS
TO EXCLUDE OPINION TESTIMONY**

**Blackburn, J.**

This matter is before me on the following motions: 1) **Daubert Motion on Expert Scott Anderson** [#46]; 2) **Daubert Motion on Expert Karl Cordova** [#47]; 3) **Daubert Motion on Expert Sara Rathburn** [#48]; 4) **Daubert Motion on Expert David Cooper** [#49]; and 5) **Defendant Water Supply and Storage Company's Motion To Strike Expert Karl Cordova for Lack of Adequate Disclosure as Required by F.R.C.P. 26(a)(2)** [#50], all filed October 29, 2007. The plaintiff filed responses and the defendant filed replies. In addition, the plaintiff filed a sur-reply [#63] addressing the motion docketed as [#50]. I deny each of the motions.

## I. BACKGROUND

This case concerns the Grand River Ditch, a drainage ditch that is carved into the slopes of the Never Summer Range. The purpose of the ditch is to capture snow melt and rain water from the eastern side of the Never Summer Range and divert it over the

Continental Divide to the Long Draw Reservoir. Defendant Water Supply and Storage Company (WSSC) is the holder of a right-of-way, or easement, for the Grand River Ditch. The majority of the Grand River Ditch flows through land that became part of Rocky Mountain National Park after the ditch was built.

On or about May 30, 2003, the Grand River Ditch breached within the boundaries of Rocky Mountain National Park. The breach was caused by water backing up in the ditch, and eventually overtopping the ditch, allegedly as a result of accumulated snow, ice, and other debris in the ditch. According to the plaintiff, water flowing through the beach excavated a gully measuring approximately 167 feet wide and 60 feet deep. A large portion of the mountainside below the breach was washed to the valley floor below the ditch by the erosive power of the water, rock, mud, and vegetation. Much of the upper Colorado River watershed in the Rocky Mountain National Park was closed to visitors until water levels in the river receded and damage to trails, bridges, and campsites could be repaired.

In the motions at issue here, the WSSC challenges the admissibility of the testimony of certain opinion witnesses who have been endorsed by the United States. WSSC argues that some or all of the testimony of these witnesses should be excluded under Fed. R. Evid. 702. I disagree.

## II. FED. R. EVID. 702

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2

The standards outlined in Rule 702 implicate, of course, the standards for admission of opinion testimony stated in the so-called *Daubert* trilogy. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The court's application of the standards of Rule 702 and the related cases is "a flexible and commonsense undertaking in which the trial judge is granted broad latitude in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." *Smith v. Ingersoll-Rand Co.*, 214 F.3d. 1235, 1243 (10th Cir. 2000) (internal quotation and citations omitted).

Rule 702 requires that opinion testimony be the product of reliable principles and methods, and that an opinion witness has applied those principles and methods reliably to the facts of the case. The reliability analysis applies to all aspects of an expert's testimony, including the facts underlying the opinion, the methodology, and the link between the facts and the conclusion drawn. *Heller v. Shaw Indus.*, 167 F.3d 146, 155 (3d Cir.1999). Consequently, the court must make a practical, flexible analysis of the reliability of the testimony, considering relevant factors and the circumstances of the case. *See, e.g., Kumho Tire*, 526 U.S. at 149-52; *Heller*, 167 F.3d at 155.

### III. SCOTT ANDERSON

Scott Anderson has a Master of Science degree in Engineering Geology and a Ph.D. in Civil Engineering. He has expressed opinions on the nature of the slope and the rock in the area of the ditch breach, and on certain factors that could have played a role in the ditch breach. WSSC argues that several opinions stated by Anderson are inadmissible, and it argues that Anderson is not qualified to render the opinions he has given.

3

First, WSSC argues that Anderson's opinion that the climate data shows that the spring of 2003 was wet, but not extremely so, is not admissible because it is not based on sufficient facts and data. To support this contention, WSSC cites the conclusion of one of its experts that there was above average snow pack in the area in 2003, and that precipitation for March and April, 2003, was well above average. WSSC challenges also Anderson's opinion that there were no extreme events on or immediately preceding the day of the breach, arguing that this opinion is not based on sufficient facts and data. WSSC claims Anderson failed to consider record high temperatures in the days preceding the breach. If the cited statements of WSSC's expert contradict the challenged statements of Anderson, they do so only obliquely. To some extent, the contrasted statements address different topics. To the extent there are any differences between the contrasted statements, the contrast demonstrates nothing more than the fairly narrow disagreements between the experts. These contrasts, however, do not demonstrate that Anderson's opinions do not have an adequate factual basis.

Second, WSSC challenges Anderson's opinion that the rock in the area of the breach is weaker than in surrounding areas, arguing again that this opinion is not based on sufficient facts and data. WSSC cites the report of one of its experts addressing this point, and asserts that it is "unlikely that the rock is any weaker than the surrounding area." *Daubert motion re: Scott Anderson* [#46], filed October 29, 2007, p. 4. The opinions of these competing experts are based on observation of the site and observation of photos. The fact that the experts disagree on this point does not demonstrate that Anderson's opinion is not supported by sufficient facts and data.

Third, WSSC objects to a statement by Anderson indicating that "[d]iscontinuities in this orientation can act as failure surfaces for large slides (as compared to raveling

4

rock) and there is evidence of such a slide surface a few hundred feet downstream of the breach." *Daubert motion re: Scott Anderson* [#46], filed October 29, 2007, Exhibit A (Anderson report), p. 3. The statement is based on a supporting photograph. WSSC claims Anderson's statement is a generic description, and notes that a WSSC expert opines that the photograph does not depict any landslides. The fact that the experts disagree does not demonstrate that Anderson's opinion is not supported by sufficient facts and data.

Fourth, WSSC challenges Anderson's conclusion that there is no evidence that an event such as an avalanche or landslide caused the breach. WSSC claims this opinion is not based on sufficient facts or data because Anderson did not consider "isolated movement of smaller quantities of snow and rock from above the Ditch." *Daubert motion re: Scott Anderson* [#46], filed October 29, 2007, p. 4. WSSC cites the report of one of its experts as support for its contention that such isolated movements must be considered to make Anderson's opinion admissible. Nothing in the record indicates that any isolated movement of smaller quantities of snow and rock is inconsistent with Anderson's opinion that there is no evidence that an avalanche or landslide caused the breach. To the extent there might be some inconsistency, at most such an inconsistency demonstrates a disagreement between the two experts, but does not demonstrate that Anderson's opinion is not supported by sufficient facts or data.

Fifth, WSSC objects to Anderson's statement that the "timber slope armor immediately downstream of the site many now be doing more harm than good as it is now concealing burrowing rodent activity." *Daubert motion re: Scott Anderson* [#46], filed October 29, 2007, Exhibit A (Anderson report), p. 3. WSSC says Anderson opines that burrowing rodent activity is occurring on the slope based on certain piles of dirt

shown in a photograph.  WSSC argues that this opinion does not have an adequate factual basis because Anderson did not observe any burrowing rodents and there are no photographs of burrows in the area.  These attacks on the factual basis for this opinion do not show that there is an inadequate factual basis for the opinion.  To the extent WSSC can show contrary facts, or that other facts also should be considered, those showings go to the weight to be ascribed to Anderson's opinion, and not to its admissibility.

WSSC challenges also Anderson's qualifications to render the opinions he has expressed.  WSSC says Anderson does not have any practical expertise in water diversion engineering or canal/ditch design, construction or operation.  Anderson's statement of his background and experience indicates that he has background and experience in slope stability issues.  *United States' consolidated opposition* [#56], filed November 21, 2007, Exhibit 3 (Anderson resume).  In the context of the opinions expressed by Anderson and challenged by WSSC, this background is sufficient to demonstrate that Anderson has the "knowledge, skill, experience, training, or education" necessary to qualify him as an expert under Fed. R. Evid. 702.  To the extent there may be gaps in Anderson's relevant qualifications, those gaps go to the weight and credibility to be accorded Anderson's opinions, and not to the admissibility of those opinions.

## IV.  KARL CORDOVA

Karl Cordova is the Program Manager for Physical Resources and Landscape Restoration for the National Park Service at Rocky Mountain National Park.  WSSC argues that several opinions stated by Cordova are inadmissible, and it argues that Cordova is not qualified to render the opinions he has given.  In addition, WSSC seeks to exclude Cordova's testimony because the United States did not provide adequate

6

disclosure of Cordova's proposed testimony, as required by Fed. R. Civ. P. 26(a)(2).

### A. Opinions and Qualifications

Cordova has stated opinions about the size of certain zones allegedly damaged by the ditch breach, and he has estimated the number of trees that were lost in these zones as a result of the breach. WSSC challenges several of these opinions.

First, WSSC argues that Cordova's opinions about the number of trees lost is unreliable because Cordova included dead trees and saplings in his count. WSSC's expert asserts that counting dead trees and saplings in not appropriate. Cordova and WSSC's expert have different opinions about what types of trees should be counted. Cordova's choice to count these trees may affect the weight to be given his opinion, but WSSC has not articulated any basis on which it can argue that counting dead trees and saplings makes Cordova's opinions unreliable.

Second, WSSC notes that Cordova has expressed varying opinions on the same issue in various drafts of his report. Such variances in Cordova's opinions go to the weight to be ascribed to his opinions. The variances noted by WSSC do not demonstrate that Cordova's opinions are so unreliable that they are not admissible under Fed. R. Evid. 702.

Third, WSSC challenges Cordova's expressed opinions concerning the size of two zones that he used to measure the harm caused by the ditch breach. WSSC argues that these size opinions are not reliable because Cordova did not create a map of the areas. Had a map been created, WSSC argues, Cordova's inclusion of land not harmed by the breach would be apparent. WSSC notes also that Cordova provided different sizes for these zones in earlier drafts of his report. These circumstances are relevant to the weight to be given these opinions by the fact finder, but these

7

circumstances do not fatally undermine the factual foundation of Cordova's opinions concerning the size of these zones.

Fourth, WSSC challenges Cordova's selection of a densely forested reference plot as a comparison plot used to calculate the injury in zone three. WSSC argues that the reference plot is not comparable to zone three and thus, the use of this reference plot is improper methodology. Except for the disagreement of WSSC's expert, nothing in the record demonstrates that use of this reference plot constitutes improper methodology. To the extent Cordova's comparisons to the reference plot are inaccurate, incomplete, or unfair, that fact goes to the weight to be ascribed to his opinions, and not to their admissibility.

Fifth, WSSC objects to Cordova's opinion concerning the number of trees lost in zone three as a result of the breach. WSSC argues that Cordova assumes without reliable basis that mature trees as well as saplings were lost. Citing its own expert's report, WSSC claims that observations in the field demonstrate that the water moving through this area was not strong enough to uproot larger saplings. The report of WSSC's expert is not the conclusive standard by which the reports of other experts must be judged. This criticism of Cordova's proposed testimony is, again, relevant to the weight to be given Cordova's opinion, but this criticism does not demonstrate that Cordova's methods are so unreliable that his opinion must be excluded under Fed. R. Evid. 702.

WSSC challenges also Cordova's qualifications to render the opinions he has expressed. Cordova's statement of his background and experience indicates that he has been involved professionally in several land restoration projects, including assessment of disturbed areas, planning restoration activities, and implementing

restoration. *United States' consolidated opposition* [#56], filed November 21, 2007, Exhibit 4 (Cordova resume). WSSC suggests that an expert with expertise in the fields of botany and plant ecology is required to provide expert testimony on the topics about which Cordova has expressed opinions. The record demonstrates that Cordova has knowledge, skill, experience, training, and education that has given him specialized knowledge that will assist the trier of fact in this case. Under Fed. R. Evid. 702, he is qualified to provide opinion testimony on the topics addressed in his report. The fact that Cordova does not have documented expertise in botany or plant ecology does not render his opinions inadmissible, although it may affect the weight and credibility to be accorded his opinions.

### B. Disclosure

WSSC argues that Cordova's proposed expert testimony must be stricken because Cordova was not disclosed by the United States as required by Fed. R. Civ. P. 26(a)(2)(B). The United States counters that Cordova's expert testimony is not subject to the disclosure requirements of Rule 26(a)(2)(B) because Cordova is not a retained expert, but rather a general employee of the United States and his duties as an employee do not regularly involve the giving of expert testimony. The United States asserts that Cordova's testimony will be based on first hand knowledge he derived from the work and analysis he has performed as part of his job at Rocky Mountain National Park. The United States asserts that Cordova's testimony will not be based on information acquired for the purpose of giving an expert opinion, or information acquired from other sources for the purpose of giving an expert opinion.

Having reviewed the WSSC's motion [#50], the United States' response [#55], WSSC's reply [#59], and the United State's sur-reply [#63], I conclude that Cordova is

not subject to the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). Cordova is employed by the United States at Rocky Mountain National Park and his normal duties are tied closely to the issues raised by the ditch breach in question here. There is no indication that Cordova's ususal duties involve the giving of expert testimony. Under these circumstances, an expert witness falls outside of the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B). *Watson v. U.S.*, 485 F.3d 1100, 1107 (10th Cir. 2007). Further, as outlined by the United States in its papers, WSSC has been given ample disclosure of Cordova's qualifications, his opinions, and the bases for those opinions.

## V. DAVID COOPER

WSSC's challenges to the opinion testimony of David Cooper are tied closely to its challenges to the opinion testimony of Karl Cordova. Cordova's August, 2006, report is among the key bases relied on by Cooper in developing his opinions.

WSSC argues that Cooper's evaluation of the tree losses in zone one must be excluded because Cooper examined tree loss over a 2.28 acre area, even though he acknowledges that 0.92 acres of this area previously were disturbed by ditch activities. Both Cordova and Cooper calculated tree loss in a 2.28 acre area, but Cordova says that the loss should not include the previously disturbed 0.92 acre area. *Daubert motion re: David Cooper* [#49], filed October 29, 2007, Exhibit B (Cordova report), p. 6. Thus, WSSC says Cooper should have calculated the loss in a 1.36 acre area. Assuming Cooper's use of the 2.28 acre figure rather than the 1.36 acre figure is an error, this error does not make Cooper's loss calculation so unreliable that it is inadmissible under Fed. R. Evid. 702. The arithmetic basis for Cordova and Cooper's calculations are transparent and, if the acreage figure is in error, that error readily can be corrected without undermining the basis of the analysis. The need for such a correction does not

10

fundamentally undermine the reliability of Cooper's analysis and opinion.

WSSC objects to five opinions expressed by Cooper because those opinions are based on tree loss and disturbance zone size estimates given by Cordova, which estimates WSSC claims are inaccurate. Cooper properly may rely on information provided by another expert in developing his own opinions. To the extent the information supplied by another expert is subject to question, as summarized above in the discussion of Cordova's opinions, such questions are relevant to the credibility and weight to be given Cooper's opinions, but those questions do not make Cooper's opinions so unreliable that they are inadmissible under Fed. R. Evid. 702.

WSSC argues that Cooper's conclusions concerning the condition of the Lulu Creek wetland are inadmissible because they are based on insufficient facts and data, and because Cooper has not applied the relevant methods and principles reliably to the facts of the case. The plaintiff asserts that the Lulu Creek wetland was damaged as a result of the ditch breach in May, 2003. WSSC argues that Cooper's opinion is not based on sufficient facts and data because Cooper visited the wetland in 2003, but has not visited the wetland since then. The United States disputes WSSC's contention that Cooper is not aware of conditions in the wetland at later times. In addition, WSSC argues that Cooper's opinion concerning reduced beaver activity in the wetland is flawed because he has failed to note a reduction in beaver activity in the area prior to the ditch breach. WSSC's expert holds a different view from Cooper's concerning conditions in the wetland. Both experts' opinions are based on observation of the wetland and examination of photos. The fact that Cooper may not have considered certain facts considered relevant by WSSC's expert goes to the weight to be accorded his opinion, but does not preclude the admission of his opinion under Fed. R. Evid. 702.

## VI. SARA RATHBURN

Sara Rathburn examined the impact that the debris flow caused by the ditch breach had on Lulu Creek and the Colorado River. Rathburn concludes that the breach cause channel morphologic changes that have altered the character of Lulu Creek and the Colorado River, caused a debris fan at the confluence of the creek and the river, increased sedimentation along the Colorado river, and altered the aesthetics of the area. WSSC objects to eight opinions expressed by Rathburn.

First, WSSC claims Rathburn's examination of historic debris flows is unfounded because she used only a geologic map to determine historic debris flows. However, as WSSC notes, in Rathburn's prior, preliminary report, she noted ample evidence of older debris flow surfaces during her field work. The fact that Rathburn may not have mentioned her field observations in her final report does not so undermine the factual basis of her examination that it must be considered to be unreliable, especially in light of the undisputed evidence that Rathburn conducted field work in examining this issue.

Second, WSSC challenges Rathburn's opinion that it will require at least 75 years to move available portions of the fan sediment downstream, and that it will take 75 - 110 years for the natural recovery of the Lulu Creek fan. WSSC argues that these opinions are not based on sufficient facts and data, and are not the product of reliable principles and methods because the opinions are based on flawed assumptions. Citing a report by one of WSSC's experts, WSSC argues that if the actual amount of sediment available for removal is considered, the recovery period is much shorter. WSSC claims Rathburn failed to note that sediment larger than cobbles is not subject to remobilization. WSSC claims also that Rathburn has not considered the amount of sediment that has been removed in the four years following the breach. Finally, WSSC

argues that Rathurn has not considered the possible effect of possible increased flows in Lulu creek, over and above the year 2004 flow data on which Rathburn relies. None of these contentions demonstrate that Rathburn's opinion does not have an adequate factual basis. Rather, these contentions are fodder for cross examination, and for the fact finder's determination of the weight to be accorded Rathburn's opinions.

Third, WSSC challenges Rathburn's conclusion that previous debris flows in the Colorado River system are caused largely by human actions. WSSC says Rathburn has no facts or data to support this conclusion. Actually, Rathburn states that "debris flow deposits resulting from human actions is greater than those occurring naturally." *Daubert motion re: Sara Rathburn* [#48], filed October 29, 2007, Exhibit A (Rathburn report), p. 18. Rathburn relied on a study conducted by Braddock and Cole as support for this conclusion. For the purpose of Fed. R. Evid. 702, this is a sufficient factual basis for the challenged opinion.

Fourth, WSSC challenges Rathburn's opinion that it will take an estimated 100 years for the Colorado River to recover within zone three-b, arguing that this opinion is not supported by sufficient facts or data, and is not the product of reliable principles and methods. WSSC says Rathburn failed to consider the impact of vegetation encroachment on the recovery. The United States says the scope of this encroachment and its effect is disputed. The fact that the competing experts disagree about the scope and effects of vegetation encroachment does not demonstrate that this opinion lacks an adequate factual basis or adequate analysis. Again, this issue is relevant only to the credibility and weight to be given Rathburn's opinions.

Fifth, WSSC challenges Rathburn's conclusion that the Colorado River above its junction with Lulu Creek is an appropriate reference against which to judge the debris

13

flow from the breach below the junction with Lulu Creek. WSSC claims this constitutes an improper comparison. One of WSSC's experts challenges the propriety of this comparison. To the extent this comparisons is inaccurate, incomplete, or unfair, that fact goes to the weight to be ascribed to Rathburn's opinions, and not to their admissibility.

Sixth, WSSC objects to Rathburn's conclusion that there has been a 100 percent loss of functioning of the Lulu Creek channel within the debris flow fan. WSSC argues that Rathburn contradicts this statement in a preliminary report she prepared. Seventh, WSSC objects to Rathburn's references to the need for restoration activities to remove sediment from the Colorado River. WSSC argues that these references are contradicted by Rathburn's preliminary report, in which she says that natural river processes are the most effective and least environmentally damaging method for sediment removal. To the extent there are variances or contradictions in Rathburn's reports, those variances go to the weight to be ascribed to her opinions. On the current record, such variances do not demonstrate that Rathburn's opinions are so unreliable that they are not admissible under Fed. R. Evid. 702.

Eighth, WSSC objects to generalized statements by Rathburn concerning loss of aquatic habitat or marginalized habitat for aquatic species. *Daubert motion re: Sara Rathburn* [#48], filed October 29, 2007, Exhibit A (Rathburn report), pp. 18-19. WSSC claims Rathburn provides no data or research to support her statements about loss of aquatic habitat. Although Rathburn does not delve deeply into this topic, the facts and analysis outlined in her report provide a sufficient analytical basis for these general statements. Any flaws or gaps in Rathburn's data or analysis go to the weight to be accorded this opinion.

14

## VII. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That Water Supply and Storage Company's **Daubert Motion on Expert Scott Anderson** [#46], filed October 29, 2007, is **DENIED**;

2. That Water Supply and Storage Company's **Daubert Motion on Expert Karl Cordova** [#47], filed October 29, 2007, is **DENIED**;

3. That Water Supply and Storage Company's **Daubert Motion on Expert Sara Rathburn** [#48], filed October 29, 2007, is **DENIED**;

4. That Water Supply and Storage Company's **Daubert Motion on Expert David Cooper** [#49], filed October 29, 2007, is **DENIED**;

5. That **Defendant Water Supply and Storage Company's Motion To Strike Expert Karl Cordova for Lack of Adequate Disclosure as Required by F.R.C.P. 26(a)(2)** [#50], filed October 29, 2007, is **DENIED**.

Dated May 1, 2008, at Denver, Colorado.

                                            **BY THE COURT:**

                                            **s/ Robert E. Blackburn**
                                            **Robert E. Blackburn**
                                            **United States District Judge**